IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JUSTIN L. JONES,**

      **Plaintiff,**

    v.                                                                 Civil Action No. 3:23cv626

**RICHMOND AUTO AUCTION OF**
**VIRGINIA, INC.,** *et al.,*

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on the following motions filed by *pro se* Plaintiff Justin L. Jones and Defendants Richmond Auto Auction of Virginia, Inc. ("RAA"), Motley's Auctions, Inc., Free Markets CRE LLC, Mark Motley, Charles Wyatt Carter, Alexis Tompkins, Carson Motley, Daniel Dunivan, Motley's Logistic Systems, LLC, Rhino Air LLC, Fortis Trustee Foreclosure Service, LLC, 1301 Rockland LLC, 2300 Deepwater Terminal Road LLC, 2700 Deepwater Terminal LLC, 3310 Deepwater Terminal LLC, 3800 Deep Water Terminal, LLC, and 4400 West Broad, LLC:

1. Defendants RAA, Motley's Auctions, Inc., and Free Markets CRE, LLC's Motion to Dismiss Fictitious Name Parties, (ECF No. 57);

2. Defendants Mark T. Motley, Charles Wyatt Carter, Alexis Tompkins, Carson Motley, and Daniel Dunivan's Motion to Dismiss Individual Defendants for Insufficient Service of Process, (ECF No. 59);

3. Defendants Motley's Auctions, Inc., Free Markets CRE LLC, Motleys Logistic Systems, LLC, Rhino Air, LLC, Fortis Trustee Foreclosure Service, LLC, 1301 Rockland LLC, 2300 Deepwater Terminal Road, LLC, 2700 Deepwater Terminal LLC, 3310 Deepwater Terminal LLC, 3800 Deep Water Terminal, LLC, and 4400 West Broad, LLC's Motion to Dismiss of the Newly Added Business Entity Defendants, (ECF No. 61);

4. Defendant RAA's Motion to Dismiss for Failure to State a Claim for Which Relief Can be Granted, (ECF No. 63);

5. Plaintiff's Motion to Re-Serve Defendants 'Daniel LeMonds' and John Doe AKA 'Officer Foultz', (ECF No. 78);

6. Plaintiff's Motion to Compel Insurance Coverage, (ECF No. 80);

7. Plaintiff's Motion to Compel Documents, (ECF No. 83);

8. Plaintiff's Motion for Leave to File a Surreply, (ECF No. 90);

9. Defendant Daniel LeMonds's Motion to Dismiss for Insufficient Service of Process and for Failure to State a Claim, (ECF No. 95);

10. Defendant RAA's Motion to Vacate the Order Granting Plaintiff *In Forma Pauperis* Status or to Dismiss the Fifth Amended Complaint, (ECF No. 97);

11. Plaintiff's Motion for Emergency Hearing, (ECF No. 102);

12. Plaintiff's Motion to Dismiss Thomas Hall Without Prejudice or Extension of Time for Service, (ECF No. 104);

13. Plaintiff's Motion to Waive Pacer Fees(s) or Exception from Fees, (ECF No. 106); and,

14. Plaintiff's Motion [to] Dismiss Defendant Christopher Foultz w/o Prejudice and Amend Doc[.] 78, (ECF No. 107).

For the reasons articulated below, the Court finds that it lacks subject matter jurisdiction over this action. Accordingly, the Court *sua sponte* dismisses this action, and remands this action to the Circuit Court for the City of Richmond, Virginia pursuant to 28 U.S.C. § 1447(c) based on a lack of subject matter jurisdiction. Because it lacks jurisdiction to do so, the Court does not reach a decision on the pending motions.

## I.  Factual and Procedural Background

As will be discussed in more detail below, Mr. Jones has presented six iterations of his Complaint to two different courts. He first presented a Complaint, an Amended Complaint, and a Second Amended Complaint to the Circuit Court for the City of Richmond, Virginia. (ECF

2

No. 1, at 1–2.) After Defendant RAA removed this case to this Court, the Court Ordered Mr. Jones to file a Third Amended Complaint. (ECF No. 2, at 1.) Mr. Jones presented a Third Amended Complaint that was improper because it attempted to bring claims under the False Claims Act. (ECF No. 27, at 2–4.) As the Court explained, "Mr. Jones may not pursue a *qui tam* [False Claims Act] action *pro se*." (ECF No. 27, at 2 (citing *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 241 (4th Cir. 2020); *United Slates ex rel. Folse v. Hallmark Youthcare-Richmond, Inc.*, No. 3:19CV09 (MHL), 2019 WL 13251169, at *2 (E.D. Va. Dec. 31, 2019); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 852 (7th Cir. 2009).) As a result, the Court declined to docket the proposed Third Amended Complaint. Mr. Jones was Ordered to file a Fourth Amended Complaint. (ECF No. 27, at 2–4.) Mr. Jones's Fourth Amended Complaint also improperly attempted to bring claims under the False Claims Act, prompting the Court to order Mr. Jones to file a Fifth Amended Complaint. (ECF No. 49, at 7.) Mr. Jones filed a Fifth Amended Complaint on January 12, 2024. (ECF No. 45.) Despite the Court giving Mr. Jones numerous opportunities to amend his Complaint and gain access to the Court, and even on a liberal reading of Mr. Jones's Fifth Amended Complaint, this Court lacks subject matter jurisdiction over this action.

        A.        **<u>Mr. Jones Files Three Complaints in State Court</u>**

On September 13, 2023, Plaintiff Justin L. Jones, appearing *pro se*, filed a Complaint in the Circuit Court for the City of Richmond, Virginia (the "Richmond Circuit Court") (Case No. CL23-4225) against Defendant RAA. (ECF No. 1, at 1.) On September 14, 2023, the Richmond Circuit Court granted Mr. Jones's motion to proceed *in forma pauperis*. (ECF No. 1, at 1.) The Complaint "alleged claims for unpaid wages, wrongful termination, and 'whistleblower' retaliation and sought damages of $37,200." (ECF No. 1, at 1.) On or about September 22,

3

2023, Mr. Jones filed an Amended Complaint in the Richmond Circuit Court, adding "allegations of employment discrimination and hostile work environment, among other claims, and [seeking] damages of $125,000." (ECF No. 1, at 1–2.) Three days later, Mr. Jones filed a Second Amended Complaint, which was substantially similar to the previous complaint, but increased alleged damages to $250,000. (ECF No. 1, at 2.)

### B. Defendant RAA Removes to Federal Court

On October 2, 2023, Defendant RAA removed Mr. Jones's state court action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.[1] (ECF No. 1, at 3.) Specifically, RAA stated that Mr. Jones "alleges that he seeks unpaid wages for the period from October 2022 until December 2022", and that these claims "arise, or may arise", under the following federal statutes: "42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), and the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*)." (ECF No. 1, at 3.) RAA further noted that there are "a variety of federal statutes that prohibit whistleblower retaliation, but their applicability depends upon context not provided in Plaintiff's complaints." (ECF No. 1, at 3.)

#### 1. The Court Orders Mr. Jones to file a Third Amended Complaint

On October 4, 2023, the Court issued an Order stating that the Second Amended Complaint, which had been filed in Richmond Circuit Court, "offends Federal Rule of Civil Procedure 8, [requiring] a short and plain statement of this Court's jurisdiction and Mr. Jones's claims for relief." (ECF No. 2, at 1.) The Court Ordered Mr. Jones to file a Third Amended Complaint—which would be Mr. Jones's first opportunity to file an Amended Complaint before

---

[1] 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

4

*this* Court—by November 1, 2023 that "outlines in simple and straightforward terms why Mr. Jones thinks he is entitled to relief and why the Court has jurisdiction over this case." (ECF No. 2, at 1 (citing Fed. R. Civ. P. 8(a)(1) and (2)).)

### 2. Defendant RAA Files a Motion to Quash and a Motion for Temporary Restraining Order and Preliminary Injunction

On October 9, 2023, Defendant RAA filed a Motion to Quash. (ECF No. 3.) In the Motion to Quash, RAA requested that the Court issue "an Order quashing a subpoena improperly issued and served by the Plaintiff." (ECF No. 3, at 1.) Two days later, Defendant RAA filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion for Injunctive Relief"). (ECF No. 9.) In the Motion for Injunctive Relief, RAA asked that the Court enter an Order against Mr. Jones in this *civil employment action* as follows:

> 1. That Plaintiff cease his *ex parte* contacts with the Defendant's employees when they involve the subject matter of this case;
>
> 2. That Plaintiff cease delivering documents to the Defendant and non-parties, except in the manner permitted by the Federal Rules of Civil Procedure and this Court's Local Rules;
>
> 3. That the Plaintiff not [] make threatening or intimidating statements against non-parties or knowingly approach within 100 yards of any non-party witness to this case, or any employee or family member of Defendant; [and]
>
> 4. That this Court's Order remain in full force and effect until such time as the Court specifically orders otherwise[.]

(ECF No. 9, at 2.)

### 3. The Court Holds a Hearing on RAA's Motions

Two days after RAA filed its Motion for Injunctive Relief, this Court scheduled an October 19, 2023 hearing regarding (1) the Motion for Injunctive Relief and (2) RAA's Motion to Quash. (ECF No. 12.) At the October 19 hearing, the Court emphasized that RAA's request was unusual at best. Preliminary injunctions and

5

temporary restraining orders seek an "extraordinary remedy" and should "be granted only sparingly." *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 590 (E.D. Va. 2008) (internal quotations and citation omitted).  Invoking such a broad and sweeping remedy in what at first glance seemed to be an employment matter seemed especially hard hitting.  The Court denied RAA's Motion for Injunctive Relief from the bench, (ECF No. 16, at 1), explaining that the balance of equities did not weigh in RAA's favor, RAA was unlikely to succeed on the merits, and the injunction would be against the public interest.  The Court also granted RAA's Motion to Quash.  (ECF No. 16.)

The Court also discussed the Court's *Pro Se* Mediation Program, which provides *pro se* plaintiffs *pro bono* legal counsel to represent them at a mediation held before a United States Magistrate Judge.  Both parties consented to the Court referring this action to the Court's *Pro Se* Mediation Program, which the Court did that same day.  (ECF No. 16, at 2.)

### 4. Mr. Jones's Proposed Third Amended Complaint is Improper, So the Court Orders a Fourth Amended Complaint Without Docketing His Proposed Amended Complaint

On October 24, 2023, Mr. Jones filed a motion to file his Third Amended Complaint *in camera*, pursuant to Section 3730(b)(2) of the False Claims Act,[2] in order to bring additional

---

[2] U.S.C.A. § 3730(b) provides in relevant part:

**(b) ACTIONS BY PRIVATE PERSONS.—**

> **(1)** A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

claims premised on the False Claims Act and to add additional defendants. (ECF No. 17, at 1.) On November 21, 2023, the Court issued an Order stating that the proposed Third Amended Complaint brought "both personal claims and, improperly, [False Claims Act, or] *qui tam*[3] claims." (ECF No. 27, at 2.) Explaining that Mr. Jones could not pursue a *qui tam* action *pro se* because a *pro se* plaintiff cannot represent the Government's interest in a *qui tam* suit, the Court denied Mr. Jones's Motion to file his Third Amended Complaint without prejudice and advised Mr. Jones that "if he wish[ed] to file a *qui tam* action, he must file it as a separate action and [would] need to obtain counsel." (ECF No. 27, at 2–3 (citing *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 241 (4th Cir. 2020); *United Slates ex rel. Folse v. Hallmark Youthcare-Richmond, Inc.*, No. 3:19CV09 (MHL), 2019 WL 13251169, at *2 (E.D. Va. Dec. 31, 2019); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 852 (7th Cir. 2009).)

The Court then Ordered Mr. Jones to "file [a Fourth] Amended Complaint[] by December 15, 2023" if he "still wishe[d] to pursue his personal claims in this case." (ECF No. 27, at 3.) The Court further Ordered that the Fourth Amended Complaint "may not reference statements in

---

**(2)** A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4[i] of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C.A. § 3730(b).

[3] "'*Qui tam*' is shorthand in current legal usage for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means who pursues this action on our Lord the King's behalf as well as his own." *U.S. ex rel. Beauchamp v. Academi Training Ctr. Inc.*, 816 F.3d 37, 39 n.1 (4th Cir. 2016) (internal quotation marks and citation omitted) (italics added).

7

the prior complaints" and "must stand or fall on its own accord." (ECF No. 27, at 3.) The Court admonished Mr. Jones "that continued filing of improper complaints in this action risks dismissal of this case." (ECF No. 27, at 4.)

On December 18, 2023, Mr. Jones filed a motion requesting that the Court extend his deadline to file his Fourth Amended Complaint from December 15, 2023 to December 18, 2023. (ECF No. 33, at 1.) Mr. Jones attached his proposed Fourth Amended Complaint to this motion. (ECF No. 33-2.) On December 20, 2023, the Court granted this request, and directed the Clerk to file the Fourth Amended Complaint, which the Clerk did that same day. (ECF No. 34, at 1; ECF No. 35.) Mr. Jones did not include any exhibits with the Fourth Amended Complaint, despite referring to them in the Fourth Amended Complaint itself. (ECF No. 35.)

On December 22, 2023, the Court issued an Order concluding that Mr. Jones "is unable to pay the required fees", and that Mr. Jones "may proceed in this Court *in forma pauperis*." (ECF No. 36, at 1.)

> **5.  Mr. Jones's Docketed Fourth Amended Complaint Violates the Court's November 21, 2023 Order and Fails to Attach Referenced Exhibits, Prompting the Court to Order a Fifth Amended Complaint**

On January 8, 2024, the Court issued an Order stating that "[t]he Fourth Amended Complaint[,] . . . in violation of the Court's November 21, 2023 Order, [ECF No. 27], contained both personal claims and, improperly, *qui tam* claims." (ECF No. 49, at 2 (citations and internal quotation marks omitted).) Specifically, the Court explained that "[t]he Fourth Amended Complaint . . . include[d] the False Claims Act as a basis for multiple causes of action." (ECF No. 49, at 3 (citing ECF No. 35, at 25, 30–31).) The Court also observed that the Fourth Amended Complaint "did not include any exhibits", but nonetheless referenced multiple exhibits. (ECF No. 49, at 3.)

8

Solely to address these issues, the Court then Ordered Mr. Jones, "no later than January 12, 2024, to remove from the Fourth Amended Complaint any causes of action brought under the False Claims Act[] and re-file the document as his Fifth Amended Complaint." (ECF No. 49, at 7.) The Court further Ordered Mr. Jones "to attach to his Fifth Amended Complaint all documents he seeks to add to his Complaint." (ECF No. 49, at 7.) The Court explained that this "short deadline" was appropriate "[g]iven the minimal changes required." (ECF No. 49, at 7.) The Court again admonished Mr. Jones "that continued filing of improper complaints in this action risks dismissal of this case." (ECF No. 49, at 7.)

On January 12, 2024, Mr. Jones filed his Fifth Amended Complaint against Defendants Mark Motley, Thomas E. Hall, Daniel Dunivan, Daniel LeMonds, John Doe AKA 'Officer Foultz', Charles Wyatt Carter, Carson Motley, Alexis Tompkins, RAA, Car-Rac, Motley's Auction & Realty Group (Henrico Co), Motley's Auction and Realty Group (Richmond CI), Motley's Auctions, Inc., Motley's Real Estate Services, Motley's Asset Disposition Group, Motley's Asset Disposition Group (Richmond CI), Free Markets CRE LLC, Motley's Logistic Systems, LLC, Motley's Commercial Real Estate, Rhino Air, LLC, SVN/Motley's (Richmond CI), Sperry Van Ness/Motley's (Henrico Co), Fortis Trustee Foreclosure Service, LLC, 1301 Rockland LLC, 2300 Deepwater Terminal Road, LLC, 2700 Deepwater Terminal LLC, 3310 Deepwater Terminal LLC, 3800 Deep Water Terminal, LLC, and 4400 West Broad, LLC (collectively, the "Defendants"). (ECF No. 53.) In the Fifth Amended Complaint, Mr. Jones seeks "no less" than $1,330,500 in damages. (ECF No. 45, at 37.)

In his Fifth Amended Complaint, Mr. Jones asserts that "[t]his Court has [j]urisdiction under 28 U.S.C. § 1331 as [f]ederal question jurisdiction arises under" the following statutes: (1) the National Labor Relations Act, 29 U.S.C. § 151; (2) the Fair Labor Standards Act, 29

9

U.S.C. § 207; and, (3) the Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. § 31105. (ECF No. 53, at 2.)

### 6. Mr. Jones Files Numerous Extremely Weak, if Not Entirely Meritless, Motions

After filing the Fifth Amended Complaint, Mr. Jones filed the following extremely weak, if not entirely meritless, motions: (1) Plaintiff's Motion to Re-Serve Defendants "Daniel LeMonds" and John Doe AKA "Officer Foultz", (ECF No. 78); (2) Plaintiff's Motion to Compel Insurance Coverage, (ECF No. 80); (3) Plaintiff's Motion to Compel Documents, (ECF No. 83); (4) Plaintiff's Motion for Leave to File a Surreply, (ECF No. 90); (5) Plaintiff's Motion for Emergency Hearing, (ECF No. 102); (6) Plaintiff's Motion to Dismiss Thomas Hall Without Prejudice or Extension of Time for Service, (ECF No. 104); (6) Plaintiff's Motion to Waive Pacer Fees(s) or Exception from Fees, (ECF No. 106); and, (7) Plaintiff's Motion [to] Dismiss Defendant Christopher Foultz w/o Prejudice and Amend Doc[.] 78, (ECF No. 107).

### 7. The Parties Attend a Mediation on February 23, 2024

Although this Court referred this action to the Court's *Pro Se* Mediation Program on October 19, 2023 in an effort to give Mr. Jones access to the Court and to *pro bono* counsel for purposes of settlement, due to logistical difficulties, a mediation could not occur until four months later, on February 23, 2024. (ECF No. 32, at 1.) The February 23, 2024 mediation did not result in a resolution of the case.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction, meaning that a federal court is only empowered to consider certain types of claims." *Turner v. Ocwen Loan Servicing, LLC*, No. 2:18CV601 (MSD), 2020 WL 6995430, at *3 (E.D. Va. Mar. 2, 2020) (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)). Courts have an "independent duty to

10

ensure that jurisdiction is proper." *Mosley v. Wells Fargo Bank, N.A.*, 802 F. Supp. 2d 695, 698 (E.D. Va. 2011) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); *see Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997) ("[Q]uestions concerning subject matter jurisdiction may be raised at any time by either party or *sua sponte* by [the] court."); *UTrue, Inc. v. Page One Sci., Inc.*, 457 F. Supp. 2d 688, 689 (E.D. Va. 2006) ("federal courts are obligated to confront and address jurisdictional defects *sua sponte*"). "When a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety." *Mosley*, 802 F. Supp. 2d at 698 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). "However desirable prompt resolution of the merits . . . may be, it is not as important as observing the constitutional limits set upon courts in our system of separated powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 110 (1998).

In cases that are removed to federal court from state court, 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the [federal] district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008) (explaining that a federal court may *sua sponte* enter a remand order based on lack of subject matter jurisdiction at any time); *Mosley*, 802 F. Supp. 2d at 698 (same); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

One basis for subject matter jurisdiction that RAA invokes here is federal question jurisdiction. Federal question jurisdiction exists where a plaintiff's claims "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Courts have explained that '[t]he mere mention of a federal statute in a complaint does not create federal [] question jurisdiction.'" *Lauter v. Schaefer*, No. 2:20CV507 (ALWA), 2021 WL 4931315, at *3 (E.D. Va.

11

Oct. 6, 2021), *aff'd*, No. 21-2189, 2021 WL 6101652 (4th Cir. Dec. 22, 2021) (quoting *Matousek v. City of Norfolk*, No. 2:18CV609 (RAJ), 2019 WL 9143509, at *4 (E.D. Va. Jan. 29, 2019)). "Rather, federal [] question jurisdiction requires that a party assert a substantial federal claim." *Matousek*, 2019 WL 9143509, at *4 (citation omitted) (dismissing *pro se* action on jurisdictional grounds despite *pro se* plaintiff stating in complaint that federal question jurisdiction was applicable where complaint "contained a passing reference to '[Americans with Disabilities Act] violations'").

### III.  Analysis

As explained above, Defendant RAA removed this case to federal court based solely on federal question jurisdiction.  (ECF No. 1, at 3.)  Although Mr. Jones asserts in his Fifth Amended Complaint that federal question jurisdiction is proper under three federal statutes (two of which plainly falter),[4] and although he appears to make passing references to additional federal laws,[5] only one cause of action, his overtime claim (the first of two counts labeled Count

---

[4] In his Fifth Amended Complaint, Mr. Jones baldly asserts that federal question jurisdiction is proper under the following statutes:  (1) the National Labor Relations Act, 29 U.S.C. § 151; (2) the Fair Labor Standards Act, 29 U.S.C. § 207; and, (3) the Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. § 31105.  (ECF No. 53, at 2.)  Mr. Jones does not attempt to bring a claim under the Commercial Motor Vehicle Safety Act of 1986.  Mr. Jones also explicitly acknowledges that the National Labor Relations Act is "[n]ot referenced in [the] [C]omplaint."  (ECF No. 53, at 2 n.2.)

[5] In Count II, which alleges defamation in violation of Virginia law, Mr. Jones states that "Officer Foulz . . . was informed of confidential information regarding Plaintiff's pay rate and details supplied on Plaintiff's application."  (ECF No. 53, at 19.)  Mr. Jones states in passing that this is a "clear conflict of interest" and is "*maybe* even a Deprivation of Rights Under Color of Law."  (ECF No. 53, at 19 (citing 18 U.S.C. § 242) (emphasis added).)  Mr. Jones also states that his resignation was due to, among other things, his refusal to "[c]ontinue operation of commercial vehicles without a commercial driver's license as required under . . . Federal Code [C.F.R.] § 383.23."  (ECF No. 53, at 29.)  As explained above, passing references to federal statutes are insufficient to support federal question jurisdiction.  *See, e.g.*, *Matousek*, 2019 WL 9143509, at *4; *Lauter*, 2021 WL 4931315, at *3.  Passing references to federal statutes are also, of course, insufficient to state a claim.

IV), explicitly arises under federal law.[6] (ECF No. 53, at 15.) Specifically, Mr. Jones brings his first Count IV of the Fifth Amended Complaint under the Fair Labor Standards Act ("FLSA"),

---

[6] Although Mr. Jones does not invoke Title VII of the Civil Rights Act of 1964 ("Title VII") as a basis for federal question jurisdiction, read liberally, Mr. Jones may attempt to bring a hostile work environment claim under Title VII in his second count labeled as Count IV, "Hostile Work Environment." (ECF No. 53, at 33.) For the reasons discussed below, to the extent Mr. Jones attempts to bring this claim, the Court lacks federal subject matter jurisdiction to consider it.

In Mr. Jones's Fourth Amended Complaint, he explicitly stated that he "IS NOT seeking a remedy from the courts for a discrimination claim in this action." (ECF No. 35, at 7 (emphasis in original).) Troublingly, Mr. Jones removed this language from his Fifth Amended Complaint, in violation of the Court's January 8, 2024 ordering Mr. Jones simply "to remove from the Fourth Amended Complaint any causes of action brought under the False Claims Act and re-file the document as his Fifth Amended Complaint", observing that this required "minimal changes." (ECF No. 49, at 7.) Mr. Jones includes a second "Count IV" labeled as "Hostile Work Environment" in his Fifth Amended Complaint, but does not cite any state or federal law under this count, nor does he list any federal law related to retaliation or discrimination as a basis for federal question jurisdiction. (*See* ECF No. 53, at 2.)

Even liberally construing Mr. Jones's second Count IV as a Title VII hostile work environment claim, the Court lacks subject matter jurisdiction to consider it due to a failure to exhaust administrative remedies. In his Fifth Amended Complaint, Mr. Jones writes that he "has filed an inquiry with the [Equal Employment Opportunity Commission,] . . . will draft a charge of discrimination no later than January 24, 2024", and states that he is "seeking retaliation-discrimination []in this action." (ECF No. 53, at 5.) Due to Mr. Jones's failure to exhaust his administrative remedies before filing his Fifth Amended Complaint, the Court lacks subject matter jurisdiction to hear this claim. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("*Before* filing suit under Title VII, a plaintiff *must* exhaust her [or his] administrative remedies by [first] bringing a charge with the EEOC." (emphasis added)); *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."); *Duke v. Xylem Tree Experts, Inc.*, No. 3:18CV290 (JAG), 2018 WL 6809184, at *3 (E.D. Va. Dec. 27, 2018) (observing that the court was "deprive[d] . . . of subject matter jurisdiction" to hear Title VII claim where plaintiff failed to exhaust administrative remedies, explaining that after a plaintiff files a charge with the EEOC, "the EEOC completes the administrative process, [and] may then issue a right to sue letter, which enables the plaintiff to file a lawsuit").

On March 1, 2024, Mr. Jones filed a "Notice of EEOC Rights to Sue" that was issued that same day. (ECF No. 91, at 1; ECF No. 91-1.) This, of course, does not repair his fatal pleading defect, as "[i]t is well-established that parties cannot amend their complaints through briefing."

13

29 U.S.C. § 207, stating that he is owed approximately 11.5 hours of "unpaid overtime wages." (ECF No. 53, at 15.)

As explicated above, passing references to federal statutes are insufficient to create federal question jurisdiction. *See, e.g.*, *Matousek*, 2019 WL 9143509, at *4; *Lauter*, 2021 WL 4931315, at *3. Rather, for federal question jurisdiction to exist, Mr. Jones must "assert a substantial federal claim." *See Turner*, 2020 WL 6995430, at *4 (citation and internal quotation marks omitted). Because Mr. Jones makes only passing references to the federal statutes he mentions, and because Mr. Jones fails to plausibly state a claim under the FLSA, the Court concludes that he has failed to assert a substantial federal claim. Accordingly, the Court may not exercise federal question jurisdiction over this action. *See Turner*, 2020 WL 6995430, at *4; *see also Matousek*, 2019 WL 9143509, at *4; *Lauter*, 2021 WL 4931315, at *3.

### A.     <u>Legal Standard: Overtime Wage Claims Under the FLSA</u>

Congress enacted the FLSA to protect "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (citation omitted). "[B]ecause the Act is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals." *Id.* (internal citation and quotation marks omitted). Specifically, "[t]he FLSA imposes minimum wage and maximum hour requirements on employers." *Seagram v. David's Towing & Recovery, Inc.*, 62 F. Supp. 3d 467, 473 (E.D. Va. 2014) (citing 29 U.S.C. §§ 206 and 207). "The FLSA mandates that employers pay non-exempt employees one and a [half times] the normal wage for the hours they work over forty hours in a workweek." *Trotman v.*

---

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

*AM Retail Grp., Inc.*, No. 4:20CV125 (ALWA), 2020 WL 9347968, at *3 (E.D. Va. Nov. 12, 2020) (citing 29 U.S.C. § 207(a)(1)).

"[T]o make out a plausible overtime claim [under the FLSA], a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek[7] and that his or her employer failed to pay the requisite overtime premium for those overtime hours." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017); *Trotman*, 2020 WL 9347968, at *3 (stating same). "Under this standard, plaintiffs seeking to [plausibly state a claim] must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." *Hall*, 846 F.3d at 777 (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (explaining that the "requirement that plaintiffs must allege overtime without compensation in a 'given' workweek [is] not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks'") (citations omitted); *see also Trotman*, 2020 WL 9347968, at *3 (merely "[s]tating that one worked over forty hours in a week and was not compensated for it is a phrase [that] is 'so threadbare or speculative' that it fails to cross 'the line between conclusory and the factual'") (quoting *Pruell*, 678 F.3d at 13).

A plaintiff asserting a claim under the FLSA may satisfy his or her "initial burden 'by estimating the length of [his or] her average workweek during the applicable period and the average rate at which she [or he] was paid, the amount of overtime wages she [or he] believes she [or he] is owed, or any other facts that will permit the court to find plausibility.'" *Alley v.*

---

[7] Within the context of the FLSA, a "workweek" is a period of seven consecutive days, or 168 hours, that "need not coincide with the calendar week but may begin on any day and at any hour of the day." 29 C.F.R. § 778.105.

*Quality Eco Techs., LLC*, No. 3:20CV355 (MHL), 2021 WL 1196188, at *9 (E.D. Va. Mar. 29, 2021) (quoting *Hall*, 846 F.3d at 777) (first alteration in original).

Finally, "in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Federal Rule of Civil Procedure 10(c)[8]], the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citing 2A Moore's Federal Practice, ¶ 10.06, p. 10–24).

### B. Mr. Jones Fails to State a Claim Under the FLSA

Mr. Jones fails to provide sufficient factual allegations to support a reasonable inference that he worked more than forty hours in at least one workweek, and that his employer failed to pay the requisite overtime premium for those overtime hours. *See Hall*, 846 F.3d at 777. Mr. Jones alleges that he was employed by RAA "from July 20, 2022[] through March 20, 2023." (ECF No. 53 ¶ 1.) Exhibit Nine to Mr. Jones's Fifth Amended Complaint provides copies of Mr. Jones's RAA timecards from July 20, 2022 through March 20, 2023. (ECF No. 53-9.) Aside from three timecards,[9] each timecard bears Mr. Jones's signature. In direct contravention to his position before this Court, the timecards reflect that Mr. Jones rarely worked over forty hours a

---

[8] Federal Rule of Civil Procedure 10(c) provides:

(c) ADOPTION BY REFERENCE; EXHIBITS. A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. **A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.**

Fed. R. Civ. P. 10(c) (emphasis added).

[9] The following timecards were not signed by Mr. Jones: (1) the timecard encompassing December 25, 2022 through January 7, 2023, (ECF No. 53-9, at 27); (2) the timecard encompassing January 22, 2023 through February 4, 2023, (ECF No. 53-9, at 31); and, (3) the timecard reflecting that Mr. Jones worked for 8.30 hours on his last day of employment, March 20, 2023, (ECF No. 53-9, at 40).

16

week, and when he did, he was paid overtime compensation. (ECF No. 53-9, at 26 (indicating that Mr. Jones worked 6.44 hours of overtime in 2022 as of December 24, 2022, and that Mr. Jones was compensated $173.88 for these overtime hours).)

In his first Count IV, Mr. Jones states a bare allegation that Defendants are "aware of unpaid wages", and he is owed "11.5 hours" in "unpaid overtime wages." (ECF No. 53, at 15.) In Count I, labeled as "Fraudulent Misrepresentation / Unpaid Wages", Mr. Jones alleges that "on more than four occasions between October 2022 and December 2022" he was "required to return to work after his scheduled shift." (ECF No. 53 ¶ 12.) Although he does not allege that he worked over forty hours during any workweek during this time period, he nonetheless states that these hours "would have allowed overtime if properly calculated." (ECF No. 53 ¶ 12.) These bare allegations conflict with Exhibit Nine to Mr. Jones's Fifth Amended Complaint, (ECF No. 53-9), which must prevail. *See Fayetteville Invs.*, 936 F.2d at 1465. As shown in Exhibit 9, Mr. Jones's timecards for the time period from October 2022 through December 2022 reveal that Mr. Jones never worked more than 40 hours per workweek during this time period, and on average he worked well below 40 hours per workweek during this time period. (*See* ECF No. 53-9, at 14–27.) Accordingly, Mr. Jones has failed "to provide some factual context that will nudge [his] claim from conceivable to plausible", and thus he has failed to state a claim for unpaid overtime under the FLSA. *See Hall*, 846 F.3d at 777 (citations and internal quotation marks omitted).

Because Mr. Jones has failed to state a claim under the FLSA and because the FLSA, even read favorably, is the only federal statute under which Mr. Jones expressly brings a federal claim in any detail, *see Matousek*, 2019 WL 9143509, at *4; *Lauter*, 2021 WL 4931315, at *3; *Turner*, 2020 WL 6995430, at *4, that Count would have been dismissed, and the Court would lack pendant jurisdiction over the remaining claims and would be required to remand all

17

remaining claims to the Circuit Court for the City of Richmond, Virginia. However, the Court must remand for a separate reason: it lacks jurisdiction over this case entirely.

### IV. Conclusion

The Court concludes that Mr. Jones fails to state *any* plausible claims in his Fifth Amended Complaint, which deprives the Court of jurisdiction altogether. This means that, with regret, the Court cannot reach a decision on the parties' pending motions. (ECF Nos. 57, 59, 61, 63, 78, 80, 83, 90, 95, 97, 102, 104, 106, 107.) The Court observes, however, that Mr. Jones's FLSA claim could not survive, no other federal claim even comes close, and Mr. Jones's remaining state law claims, over which this Court also lack jurisdiction, also appear worthy of dismissal on the merits. All Defendants have more than sufficiently established the validity of their respective Motions to Dismiss.

Nonetheless, the Court must *sua sponte* DISMISS this matter for lack of subject matter jurisdiction, and REMAND this action to the Circuit Court for the City of Richmond, Virginia pursuant to 28 U.S.C. § 1447(c). *See Steel Co.,* 523 U.S. at 110 ("However desirable prompt resolution of the merits . . . may be, it is not as important as observing the constitutional limits set upon courts in our system of separated powers); *see also O'Connor v. United States*, No. 3:14-004 (JRS), 2014 WL 12576878, at *1 (E.D. Va. June 17, 2014) ("[I]t is axiomatic that 'federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).

### FINAL ADMONISHMENT

Mr. Jones has received multiple admonishments to amend his Complaint at both the state and federal level. Presenting *five* Amended Complaints—two in state court and three post-

removal—is extraordinary. Mr. Jones has abused the generous access[10] he was given to this Court by failing to adhere to Court orders, by missing multiple deadlines, and by filing numerous meritless motions. In contrast, despite their strong initial stance in seeking extraordinary relief, Defendants have since litigated this matter fully in good faith.

The Court reiterates that Mr. Jones has filed numerous frivolous motions in this action and ignored Court orders. Mr. Jones is ADMONISHED that if he continues to file frivolous motions in this Court, he risks sanctions under Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P. 11.[11] Sanctions can include the payment of attorneys' fees incurred by Defendants in defending such motions. *See id.*

---

[10] The Court also notes that in an effort to give Mr. Jones's access to this Court, it referred Mr. Jones to settlement under the Court's Pro Se Mediation Program, with his consent, during which he was appointed counsel to mediate his claims before a United States Magistrate Judge in this Court. Scheduling the mediation had logistical difficulties, but Defendants participated in this process in utter good faith. The mediation ultimately did not end in a resolution. Mr. Jones has every right not to settle.

Nonetheless, the Court reminds Mr. Jones that it is rare to receive legal advice from any court-appointed counsel in a civil case. This further underscores that Mr. Jones has been given extraordinary access to this Court and its resources. The Court will not allow a Sixth Amended Complaint, which would be futile.

[11] Federal Rule of Civil Procedure 11 provides, in relevant part:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

An appropriate Order shall issue.

It is SO ORDERED.

Date: 04/18/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> (c) SANCTIONS.
>
>> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. . . .
>> * * *
>> (3) *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).
>>
>> (4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11.